IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RYAN BONNEAU,

        Petitioner,

v.

JEFFREY THOMAS, Warden,
FCI Sheridan,,

        Respondent.

Civil No. 3:11-cv-01347-BR

OPINION AND ORDER

    RYAN BONNEAU
    Fed. Reg. No. 66700-065
    FCI Sheridan
    PO Box 5000
    Sheridan, OR  97378

        Petitioner *Pro Se*

    S. AMANDA MARSHALL
    United States Attorney
    RONALD K. SILVER
    Assistant United States Attorney
    1000 SW Third Avenue
    Suite 600
    Portland, OR  97204

        Attorneys for Respondent

1 - OPINION AND ORDER -

BROWN, Judge.

Petitioner, an inmate at FCI Sheridan, brings this habeas corpus action pursuant to 28 U.S.C. § 2241. For the reasons that follow, the Court DENIES the Petition for Writ of Habeas Corpus.

## BACKGROUND

Petitioner is imprisoned at FCI Sheridan pursuant to an aggregate sentence of 46 months imposed by the Honorable Michael W. Mosman for the violation of supervised release in case numbers 02-cr-467-01-MO, (D. Or.) and 06-cr-380-01-MO (D. Or.), and for violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), Possession with Intent to Distribute a Controlled Substance. His projected release date, via a Good Conduct Time release, is currently May 9, 2013.[1]

On February 4, 2011, Senior Officer Specialist Van Dusen reviewed the TRUFONE inmate telephone system records and discovered that another inmate used Petitioner's Personal Access Code ("PAC") to make telephone calls on Petitioner's account. On February 11, 2011, Officer Van Dusen wrote Incident Report 2123898 which stated:

---

[1] In his Reply to Response to Amended Petition for Writ of Habeas Corpus ("Reply"), Petitioner contends his projected release date is now May 9, 2012. A review of the U.S. Bureau of Prisons inmate locator information, however, indicates that as of April 18, 2012, Petitioner's projected release date is May 9, 2013. *See* http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch &needingMoreList=false&IDType=IRN&IDNumber=66700-065&x=90&y=14.

2 - OPINION AND ORDER -

> On 02/04/11 I was reviewing the TRUFONE phone system when I discovered that inmate Bonneau #66700-065 had reportedly made a phone call from unit J K to 503-901-[XXXX] listed as friend at 2:52 PM on 02/02/11. As well as calls on 1/21/11 and 1/25/11 to the same number, further investigation of the other inmates with this approved number I have determined that inmate Palmer, #67545-065 from J K was the inmate using Bonneau's PAC number to place the calls. Circumventing security procedures including sharing PAC numbers for placing telephone calls threatens the security and orderly running of the institution.

Declaration of Daniel Cortez in Support of Respondent's Response to Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ["Cortez Decl."], Att. 1, page 5. The Incident Report charged Petitioner with a violation of Code 297, Use of the Telephone for Abuse Other Than Criminal Activity.

Also on February 11, 2011, Lieutenant J. Roszel delivered a copy of the Incident Report to Petitioner. Cortez Decl., Att. 1, page 6. Lieutenant Roszel advised Petitioner of his rights, and Petitioner responded that he understood. *Id.* Petitioner stated to Lieutenant Roszel "I don't know anything about this." *Id.* Lieutenant Roszel reported that Petitioner "had a good attitude during the investigation," and that Petitioner "did not request any witnesses." *Id.*

On February 16, 2011, the Unit Disciplinary Committee ("UDC") convened to consider the Incident Report. During the UDC meeting, Petitioner stated "I never authorized anyone to use my PAC #, nor did I give it to anyone else. Nor did I know about it until I got

3 - OPINION AND ORDER -

the shot [the Incident Report]." Cortez Decl., Att. 1, p. 5. The UDC reviewed the Incident Report and Petitioner's statement and referred the charge to the Discipline Hearing Officer ("DHO") for a hearing. *Id.*

Also on February 16, 2011, Petitioner acknowledged receipt of a notice entitled "Inmate Rights at Discipline Hearing" and of a "Notice of Discipline Hearing Before the (DHO)." Cortez Decl., Att. 1, pp. 10-11. On the "Notice of Discipline Hearing Before the (DHO)," Petitioner indicated he wished to have a staff representative at the hearing, but that he did not wish to have witnesses. Cortez Decl., Att. 1, p. 11.

On April 2, 2011, DHO D. Cortez held an administrative hearing. In his Discipline Hearing Officer Report ("DHO Report") he recounted Petitioner's statement:

> I did not allow him to use my PAC number and I didn't call that number and give him the phone either. I received a sheet of paper from Mr. Barnett that had my daily account balance, but it also had my PIN number and my PAC number. Maybe he gold a hold of it when I wasn't in my cell. He has nothing to offer me. He used my PAC number without my permission.

Cortez Decl., Att. 1, pp. 1-2. Petitioner did not offer any documentation in his defense. Petitioner's staff representative, Senior Officer Specialist K. Taylor, offered the following: "The date on the report of 2-2-11 is wrong. It should have been 2-1-11. It could also be a 397. There is no dispute Palmer is on the

4 - OPINION AND ORDER -

phone." Cortez Decl., Att. 1, p. 1. The DHO Report indicates Petitioner did not request witnesses at the hearing.

DHO Cortez found Petitioner committed the prohibited act as charged. He explained his decision as follows:

> The DHO finds inmate Bonneau committed the prohibited act of Use of the Telephone for Abuses Other Than Criminal Activity. The DHO relied upon the written account of Senior Officer Specialist G. Van Dusen, the report staff member [as set forth above].
>
> The DHO considered the Monitor Recorded Calls form dated February 11, 2011, which indicates the number 503-901-1321 was called several times by inmate Palmer as well as on February 1, 2011 and January 21st and 25th, 2011, under the PAC number of inmate Bonneau.
>
> The DHO considered the statement inmate Bonneau provided to Lieutenant J. Roszel, the investigator: "I don't know anything about this."
>
> The DHO considered the statement inmate Bonneau provided during the UDC hearing: "I never authorized anyone to use my PAC number. Nor did I give it to anyone else. Nor did I know about it until I got the shot."
>
> The DHO considered the statement inmate Bonneau provided during the DHO hearing [set forth above].
>
> While monitoring inmate phone calls Senior Officer Specialist G. Van Dusen became aware inmate Bonneau had allowed the use of his P.A.C. number by another inmate in order for the other inmate to utilize the Inmate Telephone System to place calls to outside contacts. Inmate Bonneau denied the charge, indicating he did not provide his PAC number to the other inmate. Inmates are responsible to ensure their PAC numbers are secured and are not made available or given to other inmates. Based on the evidence presented, the DHO finds inmate Bonneau committed the prohibited act of Use of the Telephone for Abuses Other than Criminal Activity.

Cortez Decl., Att. 1 pp. 2-3. The DHO imposed sanctions of loss of seven days of Good Conduct Time, loss of telephone privileges for 45 days, and an additional 180 days' loss of telephone privileges suspended pending 180 days clear conduct. Petitioner did not seek administrative review of the DHO's decision.

On November 8, 2011, Petitioner filed his Petition for Writ of Habeas Corpus in this Court challenging the legality of the disciplinary proceeding described above.[2] Petitioner alleges his constitutional right to procedural and substantive due process was violated because the DHO refused to allow Petitioner to call two witnesses, Officer Van Dusen and inmate Palmer and because the DHO relied upon insufficient evidence to find Petitioner committed the rules violation. In response, Respondent contends that Petitioner failed to exhaust his available administrative remedies and that, in any event, Petitioner was provided all process due and the finding of guilt was supported by some evidence.

---

[2]On December 15, 2011, Petitioner filed an Amended Petition adding one additional claim: Petitioner alleged he received a new, unrelated Incident Report on December 11, 2011, charging Petitioner with Phone Abuse - Circumventing Security Procedures (Attempt) and Being Insolent. As indicated in a December 30, 2011, Status Report (#11) to this Court, the BOP expunged that Incident Report, so Petitioner's claims relating to it are no longer before the Court, and this Opinion and Order addresses solely the claims pertaining to the facts described above.

6 - OPINION AND ORDER -

## DISCUSSION

### I. Exhaustion of Administrative Remedies

In general, federal prisoners must exhaust their administrative remedies prior to filing a habeas corpus petition under 28 U.S.C. § 2241. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986)(per curiam). Although the exhaustion requirement is not jurisdictional, this court may dismiss a habeas petition for failure to exhaust administrative remedies. *Id.* Exhaustion may be excused if the administrative remedies are inadequate, futile, or where pursuit of the administrative remedies would cause irreparable injury. *See Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004).

Petitioner argues exhaustion of remedies should be excused because he did not receive a copy of the DHO Report until after the time to file an administrative appeal had passed, and because BOP officials allegedly denied him access to the requisite administrative remedy forms. While the Court has some concern that Petitioner did not diligently pursue his administrative remedies, it does appear requiring exhaustion at this juncture would be futile given the length of time that has passed. Accordingly, exhaustion is excused in the circumstances of this case.

## II. Relief on the Merits

In order to obtain relief pursuant to 28 U.S.C. § 2241, a petitioner must establish that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(b)(3). Habeas corpus jurisdiction is available under § 2241 for a prisoner's claim that he has been denied good conduct credits without due process of law. *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989).

It is well established that an inmate must be afforded procedural protections before he can be deprived of a protected liberty interest, which includes good conduct time credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974); *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). However, "[p]rison disciplinary hearings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Due process in prison disciplinary hearings requires: (1) the right to appear before an impartial decision-maker; (2) 24-hour advance written notice of the disciplinary charges; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written statement by the factfinder of the evidence relied on and the reasons for the

8 - OPINION AND ORDER -

disciplinary action. *Wolff*, 418 U.S. at 563-77; *Hill*, 472 U.S. at 454; *see also Argento v. Thomas*, 2010 WL 3661998, *4 (D. Or. Sept. 17, 2010).

The substantive requirements of due process are satisfied where there is "some evidence" to support the decision by the prison disciplinary officials. *Hill*, 472 U.S. at 454. The Supreme Court explained the "some evidence" standard as follows:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* In order for a litigant to prevail on a claim of insufficient evidence in a disciplinary hearing context, he must show that the record in his case is "so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." *Id.* at 457.

Petitioner first claims that his due process rights were violated because he was not allowed to call witnesses at the disciplinary hearing. As noted, however, the Incident Report delivered to Petitioner by Lieutenant Roszel and signed by Petitioner indicates Petitioner did not request any witnesses. Likewise, the DHO Report issued by Cortez stated Petitioner waived his right to call witnesses.

9 - OPINION AND ORDER -

Petitioner argues he initially waived his right to call witnesses because he intended to rely upon his Staff Representative to decide which witnesses to call. He further states that Staff Representative Officer Taylor agreed to "present any evidence favorable" to Petitioner and to "speak to witnesses who might furnish evidence on behalf of" Petitioner. At the disciplinary hearing, however, Officer Taylor made no indication that witnesses existed who might furnish evidence on Petitioner's behalf and Petitioner himself made no affirmative request to have any such witnesses present.

Petitioner also states "[t]hat witness list was later appended." He does not, however, identify to what document it was allegedly appended and provides no evidence of the existence of such a witness list. Accordingly, the Court finds no evidence supporting Petitioner's claim that he was denied the right to call witnesses in violation of his due process rights.

Petitioner further argues that the DHO's decision was not supported by "some evidence." Petitioner first argues the DHO erred in finding Petitioner violated Code 297 because he did not personally "use" the telephone. Here, federal regulations governing inmate telephone access codes provide:

> An inmate may not possess another inmate's telephone access code number. An inmate may not give his or her telephone access code to another inmate, and is to report a compromised telephone access code immediately to unit staff.

10 - OPINION AND ORDER -

28 C.F.R. § 540.101(c). The DHO found Petitioner violated this regulation as BOP Code 297 violation, which is defined as:

> Use of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third party calling; using credit card numbers to place telephone calls, conference calling, talking in code).

28 C.F.R. § 541.13, Table 3 (2010). Aiding another inmate to violate Code 297 is also a violation of Code 297: "Aiding . . . to commit any of the prohibited acts is treated the same as committing the act itself". 28 C.F.R. § 541.3(a) (2011).

As noted, mere possession of another inmate's PIN/PAC number is one of the enumerated examples of a violation of Code 297. This example, combined with the regulation prohibiting the sharing of telephone access codes and the regulation prohibiting an inmate from aiding another to commit the prohibited act, makes it reasonable for the DHO to conclude sharing a PAC number with another inmate violated Code 297, even though the charged inmate did not personally use the telephone.

There is no dispute that another inmate used Petitioner's PAC number to make a telephone call. The Court notes Petitioner claims he did not share his PAC number, and Petitioner asserts it is possible that the other inmate took Petitioner's PAC number without Petitioner's knowledge. An equally possible explanation, however, is that Petitioner allowed the inmate to use the number,

11 - OPINION AND ORDER -

which is a violation of Code 297. Because the DHO is entitled as hearing officer to determine whether to believe the assertions of any witness and to draw reasonable inferences from the evidence, the Court concludes this record contains "some evidence" from which a reasonable DHO could conclude Petitioner shared his PAC number.

In support of his claim that the DHO lacked sufficient evidence to find him in violation of Code 297, Petitioner relies upon *Sullivan v. Thomas*, 2010 WL 3488998 (D. Or. Aug. 31, 2010). There, the Honorable Malcolm F. Marsh found no evidence to support a DHO's conclusion that an inmate possessed non-prescribed medication in violation of BOP rules. *Sullivan*, however, is distinguishable. In *Sullivan*, the inmate was found in violation of a rule which prohibited "possession of any narcotics not prescribed for the individual by the medical staff." *Sullivan*, 2010 WL 3488998 at * 2. Because the medication in question had in fact been prescribed to the inmate by BOP medical staff, Judge Marsh found the DHO's conclusion that the inmate's attempt to *hide* his prescription medication did not constitute *possession* of a *non-prescribed* medication. *Id.* at *3. Here, by contrast, the conduct the DHO found Petitioner engaged in fit squarely within the acts prohibited by Code 297.

12 - OPINION AND ORDER -

Finally, Petitioner argues his due process rights were violated because DHO Cortez was not impartial, as he had previously found Petitioner in violation of prison rules on numerous occasions. Inmates are entitled to have their disciplinary charges heard by an impartial hearing tribunal. *Wolff*, 418 U.S. at 570-71. A prison official who has participated in the case as an investigating or reviewing officer, or who has personal knowledge of the incident, is not sufficiently impartial to preside over the hearing. *Clutchette v. Procunier*, 497 F.2d 809, 820 (9th Cir. 1974), *modified*, 510 F.2d 613, *rev'd on other grounds*, *Baxter v. Palmigiano*, 425 U.S. 308, (1976).

The Court notes DHO Cortez did not play any role in the investigation or review of this incident, nor is there any evidence he had personal knowledge of the incident prior to the disciplinary hearing. To the extent Petitioner argues his prior history with DHO Cortez established bias on Cortez's part, Petitioner presents no evidence of such personal bias or that it colored Cortez's decision in any way. *See Sierra v. Scism*, 2010 WL 5553955 *5 (M.D. Pa. Dec. 14, 2010) (courts have generally held that a "generalized critique" of staff impartiality is insufficient demonstrate the degree of bias necessary to prove a due process violation); *see also Bostic*, 884 F.2d at 1271 (affirming denial of § 2241 habeas petition challenging

13 - OPINION AND ORDER -

disciplinary proceedings where inmate provided no facts to support allegation that the decisionmaker was not impartial).

Reviewing this record as a whole, the Court concludes Petitioner received all of the process due in connection with the disciplinary proceeding challenged in this action. Accordingly, Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2241, and his Amended Petition for Writ of Habeas corpus is DENIED.

## CONCLUSION

For these reasons, the Court DENIES the Amended Petition for Writ of Habeas Corpus (#5) and DISMISSES this action.

IT IS SO ORDERED.

DATED this 24th day of April, 2011.

_____
ANNA J. BROWN
United States District Judge